1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LEXINGTON INSURANCE COMPANY
and PORT OF BELLINGHAM,

　　　　　　Plaintiffs,

　　　v.

ROBERT J. LANGEI, as Personal
Representative of the Estate of Jim (James)
A. Langei,

　　　　　　Defendant.

LEXINGTON INSURANCE COMPANY
and PORT OF BELLINGHAM,

　　　　　　Plaintiffs,

　　　v.

LORA MOREN, as Personal Representative
of the Estate of Sterling Taylor,

　　　　　　Defendant.

C12-946 TSZ
(consolidated with C12-1036 RSL,
C12-1756 TSZ, and C12-1785 TSZ)

ORDER

THIS MATTER comes before the Court on a motion brought by plaintiff Port of

Bellingham (the "Port") for partial summary judgment, docket no. 67.  Having reviewed

all papers filed in support of and in opposition to the Port's motion, the Court enters the

following order.

ORDER - 1

**Background**

  This consolidated action arises out of a fire that erupted on March 30, 2012, in Squalicum Harbor in Bellingham, Washington, claiming the lives of Jim A. Langei and Sterling Taylor, husband and wife.  The fire destroyed the G East Boathouse[1] of the Squalicum Marina and the twelve (12) non-commercial yachts moored there, including the M/Y BREAKWIND, which was owned by Langei and Taylor, all of which sank into the Harbor's navigable waters.  The Port of Bellingham and its insurer Lexington Insurance Company ("Lexington") initiated this litigation against Langei's and Taylor's estates (the "Estates"), seeking to recover the amounts expended in salvaging the Boathouse and vessels, in remediating the associated oil and other pollution, and in storing and disposing of the related debris.  _See_ Am. Compls. (v. Langei Estate) (docket nos. 15 & 17); Compls. (v. Taylor Estate) (C12-1756, docket no. 1 & C12-1785, docket no. 1).

  In response, the Estates asserted a right to exoneration or limitation of liability pursuant to 46 U.S.C. §§ 30501-30512 (the "Limitation Act").  They also pleaded, as an affirmative defense, that the Port's damages were caused by the "negligence of others," and invoked the doctrines of comparative and contributory negligence.  Answers (docket nos. 39, 40, 43, & 44).  A few months later, the Estates commenced proceedings in Whatcom County Superior Court against the Port, alleging that the Port is liable for

---

[1] The parties dispute whether the G East Boathouse was a single floating structure covering thirteen boat slips or thirteen separately owned and maintained structures.  The Court need not resolve this issue in connection with the pending motion.

ORDER - 2

1   Langei's and Taylor's deaths because (i) the fire resulted from the Port's faulty electrical

2   components, and/or (ii) the Port's fire suppression system was inadequate.  _See_ Estates'

3   Compl. at ¶¶ 3.1-3.7, Ex. F to Fix Decl. (docket no. 68).  In the wrongful death action in

4   Whatcom County Superior Court, the Port moved for a stay, but its motion was denied

5   without prejudice.  _See_ Ex. G to Fix. Decl.  The Port now seeks relief from this Court in

6   two respects:  (i) the Port requests a ruling that certain of its claims against the Estates are

7   not subject to the Limitation Act; and (ii) the Port asks the Court to hold that the Estates'

8   failure to plead the wrongful death claims as compulsory counterclaims in this action bars

9   the Estates from pursuing such claims in state court.

10  **Discussion**

11  **A.      Exoneration or Limitation of Liability**

12          Under federal law, the liability of a seagoing vessel owner for damage caused by

13  the vessel may be limited, under certain conditions, to the post-accident value of the

14  vessel plus any pending freight.  _See_ _In re Glacier Bay_, 944 F.2d 577, 579 (9th Cir.

15  1991); _see also_ 46 U.S.C. §§ 30502 & 30505.  In this action, the Port and Lexington

16  assert several claims against the Estates, including violation of four (4) federal statutes,

17  namely the Oil Pollution Act of 1990 ("OPA"), the Comprehensive Environmental

18  Response, Compensation, and Liability Act of 1980 ("CERCLA"), the Federal Water

19  Pollution Control Act ("Clean Water Act"), and the Wreck Removal Act ("WRA"),[2] as

20  well as violation of a state statute, namely Washington's Model Toxics Control Act

21  _____

22  [2] The WRA claim is asserted against the Langei Estate, but not against the Taylor Estate.

23

ORDER - 3

("MTCA"), RCW Chapter 70.105D.[3]  *See* Am. Compls. at 4th, 5th, 6th, 7th, & 8th

Causes of Action (docket nos. 15 & 17); Compls. at 4th, 5th, 6th, & 7th Causes of Action

(C12-1756, docket no. 1 & C12-1785, docket no. 1).  The Port and Lexington also allege

that the Estates have indemnification obligations pursuant to a personal contract executed

by Langei, namely the Moorage Agreement dated March 2, 2010.  *See* Am. Compls. at

1st & 12th Causes of Action; Compls. at 1st & 11th Causes of Action; *see also* Ex. A to

Fix Decl.  With respect to these claims, the Port seeks a ruling that the Estates may not

limit their liability to the post-fire value of the M/Y BREAKWIND, which was destroyed

and is now worthless.

In response, the Estates do not dispute that each federal statute at issue contains,

with respect to any claims brought under such statute, an express or implied "repeal" of

the Limitation Act.[4]  Likewise, the Estates do not quarrel with the proposition that the

---

[3] In its motion for partial summary judgment, the Port refers to RCW Chapter 90.56, Washington's Oil and Hazardous Substance Spill Prevention and Response Act; however, neither the Port nor Lexington has pleaded a claim under this statute.

[4] The OPA provides in part that, "[n]otwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel . . . from which oil is discharged . . . into or upon the navigable waters . . . is liable for the removal costs and damages specified in subsection (b) . . . that result from such incident."  33 U.S.C. § 2702(a); *see also* *In re MetLife Capital Corp. (Puerto Rico v. M/V Emily S.)*, 132 F.3d 818, 822 (1st Cir. 1997) ("the OPA has repealed the Limitation Act as to oil spill pollution claims arising under the OPA").  CERCLA mandates that "[t]he owner . . . of a vessel shall be liable in accordance with this section, under maritime tort law, and as provided under section 9614 of this title notwithstanding any provision of the Act of March 3, 1851 (46 U.S.C. 183ff)," *i.e.*, the Limitation Act.  42 U.S.C. § 9607(h).  The Clean Water Act also contains "notwithstanding any other provision of law" language.  33 U.S.C. § 1321(f)(1); *see also* *In re Oswego Barge Corp.*, 664 F.2d 327, 340 (2d Cir. 1981) (observing that the remedies set forth in the Clean Water Act "are not to be varied by the different limits established by the Limitation Act").  In contrast, the WRA does not explicitly state one way or the other, but it has been interpreted as not being limited by the Limitation Act.  *See* *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 592-95 (5th Cir. 2008) (citing 33 U.S.C. §§ 409, 414 & 415).

ORDER - 4

1   Limitation Act would not relieve them from any liability under the MTCA[5] or pursuant to

2   the Moorage Agreement.[6]  Rather, the Estates contend only that (i) they are not liable

3   because the fire did not result from the acts of the decedents or because the decedents are

4   entitled to the benefit of exculpatory provisions of the statutes at issue; (ii) the Port is not

5   a proper plaintiff under the Clean Water Act or the WRA;[7] and (iii) the Estates are not

6   proper defendants under the MTCA.[8]  The Estates, however, have not themselves moved

7   for any relief, and the Court DECLINES to further address these contentions at this time.

8          With respect to the issue of whether the federal and state statutory claims and the

9   contract claims fall outside the scope of the Limitation Act, the Court GRANTS the

10  Port's motion for partial summary judgment as follows.  _See_ Fed. R. Civ. P. 56(a).  Any

11  damages that might be awarded to the Port in connection with its claims under the OPA,

12

13

14  [5] _See_ 33 U.S.C. § 2718(a)(1) ("Nothing in this Act [the OPA] or the Act of March 3, 1851 [the Limitation Act] shall . . . affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to (A) the discharge of oil or other pollution by oil within such State; or (B) any removal activities in connection

15  with such a discharge . . . .").

    [6] _See Mediterranean Shipping Co. S.A. Geneva v. POL-Atl._, 229 F.3d 397, 403 (2d Cir. 2000) ("Personal
16  contracts entered into by a vessel owner . . . are not subject to limitation under the Act."); _S&E Shipping Corp. v. Chesapeake & Ohio Ry. Co._, 678 F.2d 636, 644 (6th Cir. 1982) ("Liability stemming from a
17  personal contract is not subject to limitation under the Act.").

    [7] The Clean Water Act and the WRA define the scope of liability owed to the United States for discharge
18  of oil or a hazardous substance into, or failure to remove a vessel obstructing, navigable waters.  _See_ 33 U.S.C. § 1321(b)(3)&(f); _see also_ 33 U.S.C. §§ 409, 414 & 415.  The Estates contend that neither statute
19  authorizes a municipal corporation to initiate suit.  In its reply, the Port did not address this argument.

    [8] The MTCA authorizes a private right of action against the "owner or operator" of a "facility" for the
20  recovery of remedial costs.  RCW 70.105D.040&.080.  The Estates contend that the M/Y BREAKWIND does not constitute a "facility" within the meaning of the MTCA, but they appear to have overlooked the
21  definition of "facility," which includes, not only buildings and structures, but also motor vehicles, vessels, and aircraft.  _See_ RCW 70.105D.020(8).  The Port has articulated no view on the subject, and whether the M/Y BREAKWIND is a "facility" for purposes of the MTCA is not relevant to the issues currently before
22  the Court.

23

ORDER - 5

1  CERCLA, the Clean Water Act, the WRA, the MTCA, or the Moorage Agreement will

2  not be limited to the salvage value of the M/Y BREAKWIND, notwithstanding 46 U.S.C.

3  §§ 30501-30512.  The Court, however, makes no ruling concerning the cognizability of,

4  or any liability of the Estates relating to, such claims.

5  **B.      Compulsory Counterclaim for Wrongful Death**

6          In a federal action, a responsive pleading must include any mature compulsory

7  counterclaim.  Fed. R. Civ. P. 13(a).  A counterclaim is compulsory if it arises out of the

8  same transaction or occurrence as the opposing party's claim, is not the subject of another

9  pending action, and does not require the joinder of a party over which the Court cannot

10 acquire jurisdiction.  _Id._  A counterclaim is mature when the conditions precedent to its

11 assertion have been satisfied.  _See_ _Stone v. Dep't of Aviation_, 453 F.3d 1271, 1276-77

12 (10th Cir. 2006); _Keller Transp., Inc. v. Wagner Enters., LLC_, 873 F. Supp. 2d 1342,

13 1354-55 (D. Mont. 2012).  The Port asserts that the Estates were required to plead their

14 wrongful death claims as counterclaims in this matter and that, because they failed to do

15 so, they are now precluded from proceeding on the wrongful death claims in state court.

16          In response to the Port's motion, the Estates do not dispute that their wrongful

17 death claims against the Port arise out of the same "occurrence" as the Port's claims

18 against the Estates,[9] and they do not suggest that the wrongful death claims would require

19 the addition of another party over whom the Court cannot acquire jurisdiction.  _See_ Fed.

20

21 [9] Indeed, the wrongful death claims are premised in part on the same theory as the Estates' affirmative
   defenses to the Port's claims in this case, namely that the negligence of others, including the Port, caused
22 the fire.

23

ORDER - 6

1   R. Civ. P. 13(a)(1).  The Estates contend solely that, because they had not yet presented

2   their wrongful death claims to the Port as required by RCW 4.96.020, the claims were not

3   mature at the time the Estates filed their answers and therefore were not compulsory

4   counterclaims.  Although the Estates' position finds support in <u>Stone</u> and <u>Keller Transp.</u>,

5   those cases are distinguishable, involving right-to-sue letters and the prerequisites for

6   private claims under the OPA, respectively.

7          The issue in this case, whether the presentment requirements of RCW 4.96.020 are

8   waived with respect to any compulsory counterclaims when a municipal corporation

9   itself initiates suit, appears to be an issue of first impression.  Courts have previously

10  held, however, that sovereign immunity is waived as to compulsory counterclaims when

11  a state or municipality invokes the jurisdiction of the federal courts.  <u>Competitive Techns.</u>

12  <u>v. Fujitsu Ltd.</u>, 286 F. Supp. 2d 1118, 1129 (N.D. Cal. 2003) (citing <u>In re Lazar</u>, 237 F.3d

13  967, 978 (9th Cir. 2001)); <u>City of Newark v. United States</u>, 254 F.2d 93 (3d Cir. 1958).

14  Such waiver of sovereign immunity might extend to the notice-of-claim condition

15  precedent to commencing an action against the sovereign, and if so, would undermine the

16  Estates' assertion that their wrongful death claims were not mature at the time they filed

17  their answers.  The Court, however, DECLINES to rule on this issue because the Port

18  would not be entitled to the relief it seeks even if the Estates' wrongful death claims

19  constituted mature compulsory counterclaims.

20         The Port's position that the wrongful death claims are barred by the failure to

21  plead them as counterclaims is premised on a misunderstanding concerning Rule 13.

22  Although the failure to plead a compulsory counterclaim in a prior action might bar a

23

1   subsequent suit, the legal theory leading to such result is the doctrine of res judicata,

2   which operates only after the first case, in which the compulsory counterclaim was

3   omitted, has reached final judgment.  *See Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d

4   1246, 1253-54 (9th Cir. 1987); *see also Mitchell v. CB Richard Ellis Long Term*

5   *Disability Plan*, 611 F.3d 1192, 1201 (9th Cir. 2010) ("where a party has failed to plead a

6   compulsory counterclaim, the claim is waived and the party is precluded by principles of

7   res judicata from raising it again").  Rule 13 does not itself prevent the filing of a separate

8   lawsuit instead of a compulsory counterclaim.  *See* William W. Schwarzer, A. Wallace

9   Tashima, & James M. Wagstaffe, FEDERAL CIVIL PROCEDURE BEFORE TRIAL at ¶ 8:1177

10   (2014).

11      Moreover, while the federal action in which the counterclaim should have been

12   interposed remains pending, leave of the Court may be sought to amend the answer to

13   include the omitted counterclaim.[10]  The Port fails to explain why, if the Estates were to

14   move for leave to amend to assert wrongful death counterclaims,[11] the Court would not

15

16   [10] 6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, & Adam N. Steinman, FEDERAL PRACTICE & PROCEDURE § 1430 (3d. ed. 2010) [hereinafter "WRIGHT & MILLER"] ("Prior to
17   December 2009, Rule 13(f) provided that a pleader could obtain leave of the court to amend the pleadings and assert a counterclaim that was omitted 'through oversight, inadvertence, or excusable neglect or if
18   justice so requires.'. . .  Some confusion existed under Rule 13(f), however, as to how it should be applied in conjunction with Rule 15, which provides for the amendment of pleadings.  It generally was agreed that the rules should be construed together and the courts typically adhered to the liberal amendment
19   policy of Rule 15, freely granting leave to add omitted counterclaims. . . .  The 2009 amendments to Rule 13 avoid any possibility of confusion by eliminating subdivision (f) altogether and thereby clarifying
20   that the decision whether to allow an amendment to add an omitted counterclaim is governed exclusively by Rule 15.").

21   [11] The Court does not view the Estates' alternative request that their state court action be removed to this Court as a motion for leave to amend their answer.  The Estates cite no authority for the proposition that
22   the Court could "demand" removal of the wrongful death suit.  *See* Resp. at 15 (docket no. 69).  The Estates also fail to articulate an independent basis for subject matter jurisdiction over such maritime

23

ORDER - 8

1  grant such motion.  Indeed, the discovery deadline of December 30, 2014, has not yet

2  expired, the trial date of April 13, 2015, is over nine months away, and the Port has been

3  aware of these potential counterclaims since November 2013, when the state action was

4  commenced.  In sum, the Port has not articulated any prejudice that might result from

5  granting the Estates leave to amend their answers, <u>see</u> Fed. R. Civ. P. 15(a)(2), and it has

6  not demonstrated that any failure to plead a compulsory counterclaim could not, at this

7  time, still be cured.

8       In advocating for a ruling that the wrongful death claims are now barred, the Port

9  is essentially seeking an injunction against the pending litigation in state court.  The law

10 is clear that the Court cannot grant such relief.  <u>See</u> 28 U.S.C. § 2283; <u>see also</u> <u>Seattle</u>

11 <u>Totems Hockey Club, Inc. v. Nat'l Hockey League</u>, 652 F.2d 852, 855 n.5 (9th Cir. 1981)

12 ("a federal court is barred by § 2283 from enjoining a party from proceeding in state

13 court on a claim that should have been pleaded as a compulsory counterclaim in a prior

14 federal suit"); <u>Carter v. Bedford</u>, 420 F. Supp. 927, 929 (W.D. Ark. 1976) ("[I]f a party

15 asserts a claim in a state court that is a compulsory counterclaim in an already pending

16 federal action, the federal court cannot enjoin the prosecution of the state proceeding. . . .

17 The result is that in the absence of voluntary restraint by one of the courts, both the

18

19 and/or state law claims.  <u>See</u> <u>Coronel v. AK Victory</u>, -- F. Supp. 2d --, 2014 WL 820270 at *7 (W.D. Wash. Feb. 28, 2014) ("28 U.S.C. § 1333 did not convey subject matter jurisdiction to federal courts hearing maritime claims brought at law."); <u>Stewart v. Atwood</u>, 834 F. Supp. 2d 171, 178 (W.D.N.Y. 2012)

20 ("Common law maritime cases filed in state court are not removable to federal court, due to 28 U.S.C. § 1333's 'saving to suitors' clause." (quoting <u>Pierpoint v. Barnes</u>, 94 F.3d 813, 816 (2d Cir. 1996) (citing

21 <u>Romero v. Int'l Terminal Operating Co.</u>, 358 U.S. 354, 363 (1959)))).  If the wrongful death claims, however, were pleaded as and constituted compulsory counterclaims, the Court would have supplemental

22 jurisdiction over them.  <u>See</u> <u>Martin v. Law Offices of John F. Edwards</u>, 262 F.R.D. 534, 536 (S.D. Cal. 2009); <u>see also</u> 28 U.S.C. § 1367(a).

23

1  federal and state actions will proceed toward judgment and the first to reach that point

2  will serve as the basis for asserting a res judicata or collateral estoppel defense in the

3  action that is still being adjudicated." (quoting 6 WRIGHT & MILLER § 1418)); _Nolen v._

4  _Hammet Co._, 56 F.R.D. 361 (D.S.C. 1972).

5      The authorities cited by the Port do not support a contrary view.  As recognized by

6  those authorities, a tension exists between (i) the generally exclusive jurisdiction vested

7  in federal courts to determine a vessel owner's right to exoneration or limitation of

8  liability, and (ii) a claimant's right to pursue remedies against a vessel owner in state

9  court.  _See_, _e.g._, _Lewis v. Lewis & Clark Marine, Inc._, 531 U.S. 438, 442 (2001); _compare_

10 Limitation Act, 46 U.S.C. § 30511(a) ("The owner of a vessel may bring a civil action in

11 a district court of the United States for limitation of liability under this chapter.") _with_ 28

12 U.S.C. § 1333(1) ("The district courts shall have original jurisdiction, exclusive of the

13 courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, _saving to_

14 _suitors in all cases all other remedies to which they are otherwise entitled_." (emphasis

15 added)).  To reconcile the Limitation Act with the saving-to-suitors clause of § 1333,

16 courts have carved out two exceptions to exclusive federal jurisdiction:  (1) when the

17 limitation fund (_i.e._, the value of the vessel and any pending freight) exceeds the amount

18 of all claims asserted against the vessel owner, and (2) when only a single claimant seeks

19 recovery against the vessel owner.[12]  _Lewis_, 531 U.S. at 442, 451.

20

21

22  [12] In either of these scenarios, a state court may adjudicate the claims against the vessel owner, and the federal court may, given the appropriate stipulations, stay its own Limitation Act proceeding pending resolution of the state court matter.  _Lewis_, 531 U.S. at 453-56; _Langnes v. Green_, 282 U.S. 531 (1931);

23

ORDER - 10

1    These two exceptions constitute situations in which a concursus, *i.e.*, a proceeding

2    in which two or more competing claims are litigated, is unnecessary; when the limitation

3    fund is sufficient to pay all potential claims or when only a single claim is made, the

4    claims are not in conflict and need not be prioritized or satisfied in a pro rata fashion.  *See*

5    *S&E Shipping*, 678 F.2d at 642-43.  In such circumstances, a parallel state court action

6    does not jeopardize the vessel owner's rights under the Limitation Act.  On the other

7    hand, when the matter involves multiple claims that in the aggregate might exhaust the

8    limitation fund, a concursus is required, and a federal district court may enjoin other

9    proceedings relating to the maritime incident at issue, including those in state court,

10   without running afoul of the Anti-Injunction Act, 28 U.S.C. § 2283.  *See* 46 U.S.C.

11   § 30511(c); Fed. R. Civ. P. Supp. Admiralty Rule F(3); *Beal v. Waltz*, 309 F.2d 721, 724

12   (5th Cir. 1962).

13   In indirectly asking this Court to enjoin the action in Whatcom County Superior

14   Court, the Port contends that the Estates' wrongful death claims belong within the

15   concursus relating to their claim for exoneration or limitation of liability.  The Port,

16   however, fails to explain how a concursus is even relevant when the bulk of the Port's

17   claims against the Estates are beyond the reach of the Limitation Act, and when the Port

18   _____

19   *In re McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 828 (7th Cir. 1996) ("The shipowner's right to a
     federal admiralty forum is tentative: the claimant's preference for a different forum will prevail . . . where
20   the situation is appropriate under established case law for federal court abstention.  When the federal
     court abstains, it retains jurisdiction over the limitation of liability question pending resolution of the
21   liability issues."); *see Gorman v. Cerasia*, 2 F.3d 519, 526 (3d Cir. 1993) ("as long as the priority
     stipulations filed in the district court ensure that the shipowner will not be exposed to competing claims to
     the limited fund representing more than the value of his or her vessel, the district court may authorize the
22   parties to proceed with the state court action").

23

ORDER - 11

1   is, in essence, a lone claimant.  Opposing claims like those at issue here, in which each

2   side blames the other for the injury, are not the type of competing claims that give rise to

3   a concursus, in which all claimants are adverse to the same entity, *i.e.*, the vessel owner,

4   and vie for a share of the insufficient resources.

5          The Port further argues that the Estates are not "suitors" within the meaning of

6   § 1333 and are therefore not entitled to pursue remedies outside of this Court's admiralty

7   jurisdiction, citing *Offshore of the Palm Beaches, Inc. v. Lynch*, 741 F.3d 1251 (11th Cir.

8   2014), and that the Estates should not be permitted to benefit from a state court judgment

9   while at the same time being able to disavow such judgment if it is adverse, citing *Beal*,

10  309 F.2d at 723.[13]  The circumstances in *Lynch*, *Beal*, and the other authorities on which

11  the Port relies, however, differ from the posture of this case.  In each of those other

12  matters, the vessel owner pursued Limitation Act proceedings in federal court while one

13  or more claimants brought suit against the vessel owner in state court.  In contrast, here,

14  the vessel owner is not the defendant in state court, but is instead the plaintiff, seeking to

15  hold a municipal corporation liable for causing, or failing to provide the resources

16

17

18  [13] In *Beal*, the claimant sued in state court to recover for injuries sustained when a motorboat exploded. 309 F.2d at 722.  The owner of the motorboat subsequently commenced Limitation Act proceedings in federal court and obtained an injunction against the state court action.  *Id.*  Several months later, despite

19  such restraint, the state court sua sponte entered summary judgment in favor of the vessel owner.  *Id.* at 723.  The *Beal* Court did not permit the vessel owner to use the favorable state court judgment as res judicata in the Limitation Act proceedings because "sustain[ing] this position would be to condone [the

20  vessel owner] claiming any benefit forthcoming from the state court while at the same time being able to disavow any adverse judgment."  *Id.*  Unlike the vessel owner in *Beal*, the Estates do not seek to and cannot escape the preclusive effects of any adverse rulings in the Whatcom County Superior Court

21  matter; the state court litigation has not been stayed or enjoined pursuant to the Limitation Act, and the Estates have no basis under the Limitation Act to dispute the state court's jurisdiction or the validity or

22  binding nature of its judgments.

23

ORDER - 12

1   necessary to combat, the fire at issue.  In asserting their wrongful death claims, the

2   Estates are not acting as a vessel owner trying to shield or defend itself from liability.

3   Rather, in their capacity as wrongful-death action plaintiffs, the Estates fall well within

4   the ambit of "suitors" as contemplated in § 1333, and are entitled to choose a state forum

5   for their maritime claims.

6   **Conclusion**

7        For the foregoing reasons, the Port's motion for partial summary judgment, docket

8   no. 67, is GRANTED in part and DENIED in part.  The Court HOLDS that the Port's

9   federal and state statutory claims, as well as its contract claims, are not subject to or

10  limited by the Limitation Act, 46 U.S.C. §§ 30501-30512.  The Court, however, makes

11  no ruling concerning the cognizability of, or liability related to, such claims.  The Port's

12  request that the Court deem the Estates' wrongful death claims precluded by the failure to

13  plead them as counterclaims in this action and/or that the Court enjoin the related action

14  in Whatcom County Superior Court is DENIED.

15       Given the timing of the Port's motion for partial summary judgment and the

16  Court's ruling thereon, the Court sua sponte EXTENDS the deadline for amending

17  pleadings.  If the Estates wish to amend their answers to assert the wrongful death claims

18  as counterclaims, they are hereby GRANTED LEAVE to do so via electronic filing of

19  such amended pleadings on or before August 21, 2014.[14]

20

21

22  [14] The Court recognizes that, although maritime law will apply regardless of whether the wrongful death claims are adjudicated in state or federal court, *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222-23 (1986), a substantial question exists as to whether the Estates would be entitled to a jury trial if the

23

ORDER - 13

1

IT IS SO ORDERED.

2

The Clerk is directed to send a copy of this Order to all counsel of record.

3

Dated this 18th day of July, 2014.

4

5

_____

6

THOMAS S. ZILLY
United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

wrongful death claims were pursued as counterclaims in this matter.  *See* *Wilmington Trust v. U.S. Dist.*

19

*Court for the Dist. of Haw.*, 934 F.2d 1026 (9th Cir. 1991); *Sphere Drake Ins. PLC v. J. Shree Corp.*, 184
F.R.D. 258, 259 (S.D.N.Y. 1999) (observing that courts are split concerning whether a defendant in an
admiralty suit is entitled to a jury trial with respect to compulsory counterclaims, and interpreting the

20

Ninth Circuit's decision in *Wilmington* as holding that "an admiralty defendant does not lose the right to a
jury trial where the defendant's claims are based upon alternative (*e.g.* diversity) jurisdictional grounds").

21

The Court will address this issue if the Estates assert their wrongful death claims as counterclaims in this
matter, but in the meanwhile, counsel are encouraged to meet and confer regarding whether the parties
wish to consent to a jury trial on all claims and potential counterclaims pursuant to Federal Rule of Civil

22

Procedure 39(c)(2).

23

ORDER - 14