|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT SEATTLE | |
| LEXINGTON INSURANCE COMPANY; and<br>PORT OF BELLINGHAM,<br><br>  Plaintiffs,<br>  v.<br><br>ROBERT J. LANGEI, as Personal Representative of the Estate of Jim (James) A. Langei; and LORA MOREN, as Personal Representative of the Estate of Sterling Taylor,<br><br>  Defendants,<br>  v.<br><br>DUTRA CONSTRUCTION CO., INC.; and ELITE ELECTRICAL CONTRACTORS INC.,<br><br>  Third-Party Defendants. | C12-946 TSZ |
| In re DAVID L. PETERSON; DAVID D. CAHALAN, et al.; ROGER G. SMITH, et al.; RANDLE CARR; DANIEL RINGLER; STEVEN ERSHIG; WILLIAM DODGE, et al.; MICHAEL F. ROBERTS, et al.; ALLAN S. TROUPIN; KRIS AAMOT as Personal Representative of the Estate of Allyn C. Deets; and ROGER SCHJELDERUP, et al. | C12-1829 TSZ<br><br>MINUTE ORDER |

(1) The motion, docket nos. 167 & 169 in C12-946, and docket nos. 147 & 149 in C12-1829, to strike the declaration of Abid Kemal, Ph.D. is DENIED. The moving parties are David L. Peterson, David D. Cahalan and Mary F. Brown, Roger G. and Carol J. Smith, Randle Carr, Daniel Ringler, Steven Ershig, William Dodge, individually and as personal representative of the Estate of Maryteen Dodge, Michael F. and Barbara

MINUTE ORDER - 1

Roberts, Allan S. Troupin, and Roger and Lisa Schjelderup (collectively, the "Vessel Owners").  The Vessel Owners do not dispute, and the Court concludes, that Dr. Kemal is qualified to render an expert opinion concerning the cause of the fire at issue.[1]  *See* Fed. R. Evid. 702.  Dr. Kemal has opined that the fire at issue, which erupted on March 30, 2012, in Bellingham's Squalicum Harbor, likely originated inside the G East Boathouse on a vessel or slip to the east of Slip 2, in which the M/Y BREAKWIND was moored.[2]  Kemal Decl. at ¶ 10.  The Vessel Owners have moved to strike Dr. Kemal's declaration on the following grounds:  (i) failure to employ National Fire Protection Association ("NFPA") standard 921; (ii) reliance on the testimony of a witness who has been convicted of child molestation; (iii) disregard of lay witness opinion that the fire began on or near the M/Y BREAKWIND;[3] and (iv) failure to identify the exact origin of the fire.  These arguments concern the weight, not the admissibility, of Dr. Kemal's opinion, and do not support striking his declaration.  First, although NFPA 921 is an "acceptable guide for fire investigation methodology," it is not the only reliable way to investigate a fire, and an expert's use of a procedure other than NFPA 921 does not render his or her opinions per se unreliable.  *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 2014 WL 1494023 at *4 (W.D. Wash. Apr. 16, 2014); *see also Daubert v. Merrell Dow*

---

[1] Dr. Kemal has been retained by the Port of Bellingham.  He has advanced degrees in mechanical engineering from Stanford University, has expertise in combustion, thermodynamics, gas dynamics, and heat transfer, and regularly investigates fires, explosions, and detonations.  App'x A to Kemal Decl., Ex. 7 to Matison Decl. (C12-946, docket no. 160-6; C12-1829, docket no. 144-6).

[2] At the time of the fire, Jim A. Langei and Sterling Taylor, husband and wife, were residing on the M/Y BREAKWIND.  Langei and Taylor perished in the fire, and the G East Boathouse, along with the 12 non-commercial yachts in its 13 slips, sank into Squalicum Harbor's navigable waters.  At the time of the fire, the slips in the G East Boathouse were arranged as follows:

| | 2 | 4 | 6 | 8 | 10 | 12 | 14 | 16 | 18 | 20 | 22 | 24 | 26 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **WEST** | Langei/Taylor | Smith | Dodge | Cahalan | Deets | Osterloh | Troupin | Carr | Roberts | Ringler | Schjelderup | Peterson | Ershig | **EAST** |

*See* Ex. 5 to Matison Decl. (C12-946, docket no. 160-4; C12-1829, docket no. 144-4); *see also* Amended SAR F(5) Claims (C12-1829, docket nos. 61-69); Complaint at ¶ 12 (C12-1556, docket no. 1); Complaint at ¶¶ 11-12 (C15-60, docket no. 1).

[3] The Vessel Owners overstate in asserting that witness Elizabeth Kilanowski "places the origin of the fire in Slip 2."  Reply at 6 (C12-946, docket no. 167; C12-1829, docket no. 147).  In her deposition, Kilanowski merely agreed with counsel for three of the Vessel Owners (namely, Dodge, Roberts, and Troupin) that the only place she saw fire was the first slip; everything else "had collapsed by then."  Kilanowski Dep. at 124:2-13, Ex. B to Sweeney Decl. (C12-946, docket no. 168; C12-1829, docket no. 148).  This testimony relates to a late stage of the fire and indicates nothing about its origin.

MINUTE ORDER - 2

*Pharms., Inc.*, 509 U.S. 579, 589 (1993) ("the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable").  Second, a conviction for child molestation does not entirely discredit a witness's testimony,[4] and it might not even be admissible for impeachment purposes.  <u>See</u> Fed. R. Evid. 609(a)(1)(A) (requiring that the probative value of such conviction be weighed against its prejudicial effect pursuant to Rule 403).  Third, lay witness opinions concerning where or how the fire at issue started are unlikely to be admissible, <u>see</u> Fed. R. Evid. 701(c), and they would not in any event form a proper basis for excluding an expert's contrary opinion.  Finally, Dr. Kemal's silence on the precise source of the fire does not render inadmissible his opinion that the fire spread from east to west.[5]

(2) The Vessel Owners' motion for summary judgment, docket nos. 152 & 154 in C12-946, and docket nos. 135 & 137 in C12-1829, is DENIED.

(a) The Vessel Owners previously moved for summary judgment on the ground that, because they have settled with the Langei and Taylor Estates (the "Estates"), the doctrine announced in <u>McDermott, Inc. v. AmClyde & River Don Castings, Lts.</u>, 511 U.S. 202 (1994), bars the Port of Bellingham's claims against them for indemnification and contribution.  As to indemnification, which is premised on the Moorage Agreements between the Port of Bellingham and each of the Vessel Owners, the Court denied the Vessel Owners' earlier motion for summary judgment, holding that <u>McDermott</u> does not apply to contractual indemnity claims.  Order at 4 (C12-1829, docket no. 116).  The Vessel Owners' current motion appears to seek reconsideration of this ruling, and such request is hereby DENIED.

---

[4] Indeed, such conviction does not even create any doubt about the veracity of Gregory Bass, a former firefighter who was working on March 30, 2012, on a nearby barge construction project.  At 5:10 a.m., Bass could see the fire from his vantage approximately ¾ of a mile away.  Bass Decl. at ¶¶ 5-6 & 10-11, Ex. 4 to Matison Decl. (C12-946, docket no. 160-4; C12-1829, docket no. 144-4).  At that time, Bass had just exited the confined space below deck of the barge, and he was required, in the ordinary course of his duties, to log the time.  <u>Id.</u> at ¶¶ 9-10.  When he later provided a witness statement, Bass was able to refer to his contemporaneously created record, <u>id.</u> at ¶ 10, which has a purpose unrelated to this litigation and would presumably be admissible pursuant to Federal Rule of Evidence 803(5) or (6).

[5] Consistent with the view that the fire spread from east to west, John Loud, a registered Professional Engineer and a Certified Fire and Explosion Investigator, specializing in electrical engineering issues, has opined that the Port of Bellingham's electrical equipment, which was located on the exterior of the west wall of the G East Boathouse, did not start the fire, and he has identified a number of fire hazards (heaters or dehumidifiers, heat lamps, portable light fixtures, improperly grounded wiring, twisted rather than soldered wire connections, Romex or type NM cabling not rated for use in marine applications, and household extension cords) that existed in the slips east of the one in which the M/Y BREAKWIND was moored.  Loud Decl. at ¶¶ 6-16, 20-27, Ex. 6 to Matison Decl. (C12-946, docket no. 160-5; C12-1829, docket no. 144-5).  The Vessel Owners have not, however, moved to strike Mr. Loud's declaration.

MINUTE ORDER - 3

(b) When the Vessel Owners previously moved for summary judgment on the Port of Bellingham's contribution claim, the Court indicated it would not address the argument that the *McDermott* doctrine barred the claim in the absence of briefing from the Estates, which might be prejudiced by the ruling proposed by the Vessel Owners.[6] Order at 4 n.3 (C12-1829, docket no. 116). The Estates have now had an opportunity to present their views, indicating merely that the Vessel Owners' motion "is not directed to the Estates' claims." Resp. at 2 (C12-946, docket no. 166). The Court HOLDS that *McDermott* does not govern. The Estates never formally asserted wrongful death or similar claims against the Vessel Owners, and they are now barred from doing so by the Court's entry of default against all persons who failed to timely file a claim or an answer, as required by Supplemental Admiralty Rule ("SAR") F(5), in the exoneration or limitation of liability proceedings initiated by the Vessel Owners. *See* Minute Order (C12-1829, docket no. 88). Indeed, the Estates entered into the settlement, pursuant to which they received $9,000 from each of the Vessel Owners, almost a year after the deadline for filing an SAR F(5) claim or answer had expired. *See* Minute Order (C12-1829, docket no. 18); Aff. of Publ'n (C12-1829, docket no. 20); Receipt and Release of All Claims, Ex. D to Sweeney Decl. (C12-946, docket no. 153; C12-1829, docket no. 136). Because the Vessel Owners and the Port of Bellingham are not defendants in the same action, and are not being sued by the same entities, namely the Estates, the proportionality rule of *McDermott* does not control. *See Powers v. Bayliner Marine Corp.*, 855 F. Supp. 199, 204 (W.D. Mich. 1994). The Vessel Owners' motion for summary judgment on the Port of Bellingham's contribution claim is therefore DENIED.

---

[6] In *McDermott*, the Supreme Court adopted a proportionate approach to dealing with the liability of nonsettling defendants. In that case, McDermott brought suit against (i) AmClyde, which had designed and constructed a 5,000-ton crane for McDermott, (ii) River Don Castings, Ltd., which had supplied the hook for the crane, and (iii) three entities that had provided the supporting steel slings for the crane. 511 U.S. at 204-05 & n.2. On the eve of trial, McDermott settled with the three "steel sling" defendants for $1 million. *Id.* at 205. The jury found that McDermott's total damages amounted to $2.1 million, and allocated responsibility as follows: 32% to AmClyde, 38% to River Don, and 30% jointly to McDermott and the settling defendants. *Id.* at 206. AmClyde, however, was immune from damages under the terms of its contract with McDermott. *Id.* at 210 n.10. With respect to River Don, the question before the Supreme Court was whether River Don was entitled to an offset of the $1 million paid to McDermott by the settling defendants, leaving it to pay $1.1 million (referred to as the *pro tanto* approach, which could have been adopted either with or without a right to seek contribution from the other defendants), or whether River Don was required to pay only its proportionate share (38% of $2.1 million, or $798,000), with no ability to seek, and no potential liability for, contribution. *Id.* at 208-11. The Supreme Court chose the latter option, thereby placing on future admiralty or maritime plaintiffs the risk that any settlement might prove to be too "meager." *Id.* at 221; *see* Jason W. Gaarder & Jacqueline F. McGowan, *Recent Developments in Maritime Law*, 20 Tul. Mar. L.J. 361, 389 (1996) ("As a result of *McDermott*, the risk of inequitable settlement is now uniformly on the plaintiff.").

MINUTE ORDER - 4

(c)    In their current motion for summary judgment, the Vessel Owners repeat an argument made in their previous motion, namely that the Port of Bellingham is entitled to indemnification pursuant to the Moorage Agreement only if the fire "originat[ed] on, from, or as a result of" one of the Vessel Owners' boats and that, because the Port of Bellingham has not proven the fire began on or was caused by one of the Vessel Owners' yachts, it cannot prevail on its claim for indemnification. The Court previously ruled that where and how the fire started involves genuine disputes of material fact that preclude summary judgment. Order at 4 (C12-1829, docket no. 116); see also Fed. R. Civ. P. 56(a). The Vessel Owners have articulated no reason for the Court to reconsider its prior decision, particularly when discovery is not yet complete and expert reports need not be disclosed for another three months. To the contrary, the pending motion for summary judgment and responses thereto indicate even more strongly that the question of causation is appropriately reserved for the trier of fact. In light of the factual issues concerning the source of the fire, the Court need not address the Vessel Owners' interpretation of the Moorage Agreement.[7]

---

[7] The Moorage Agreement contains the following indemnification provision:

> I further agree to indemnify and hold the Port of Bellingham harmless from any and all claims for (i) personal injury and/or (ii) property damage when such personal injury or property damage claims result from fire, combustion, discharge of contaminants, pollution or any other occurrence originating on, from, or as a result of the vessel.

Ex. 9 to Matison Decl. (C12-946, docket no. 160-8; C12-1829, docket no. 144-8). The crux of the Vessel Owners' argument is that the phrase "originating on, from, or as a result of the vessel" modifies each preceding word in the clause, namely, "fire, combustion, discharge of contaminants, pollution or any other occurrence." This view, however, runs contrary to the canon of construction known as the last antecedent rule. See City of Spokane v. County of Spokane, 158 Wn.2d 661, 673, 146 P.3d 893 (2006). Under this rule, qualifying words and phrases refer only to the last antecedent, unless a comma separates the qualifier, in which case it applies to all antecedents. Id.; see also Barnhart v. Thomas, 540 U.S. 20, 26 (2003) ("a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows"). In Barnhart, the Supreme Court used as an example parents who, before leaving their teenage son alone in the family home for the weekend, forbid him from throwing a party or engaging in any other activity that damages the house. 540 U.S. at 27. The Barnhart Court explained that, if the son nevertheless has a party and is caught, he cannot avoid punishment by arguing that the house was not damaged. Id. The parents' reason for proscribing a party might have been unrelated to possible damage to the house, for example, the risk that underage drinking might occur. Id. Likewise, in this case, a strong argument can be made, pursuant to the last antecedent rule, that because the phrase "originating on, from, or as a result of the vessel" is not preceded by a comma, it qualifies only "any other occurrence," and the Port of Bellingham would be entitled to indemnification from the Vessel Owners for personal injury claims resulting from fire or combustion, even if the source of the fire or combustion was the G East Boathouse rather than one of the pleasure crafts moored inside. Aside from the issue of how the indemnification provision of the Moorage Agreement should be interpreted, the Vessel Owners have not shown, as a matter of law, that they would have no liability if the fire began in the G East Boathouse. The Vessel Owners appear not to dispute that the Port of Bellingham's Rules, Regulations and Procedures for the Blaine and Squalicum Harbors (the "Harbor Rules") are incorporated as terms of the Moorage

MINUTE ORDER - 5

Agreement, and that under ¶ 2.2(Q)(3) of the Harbor Rules, the Vessel Owners would be required to indemnify the Port of Bellingham for any personal injury resulting from a violation of the Harbor Rules. Among the Harbor Rules the Port of Bellingham asserts might have been breached within the G East Boathouse, thereby causing the fire, are (i) the requirement that shore power connections be designed for marine applications, and (ii) the prohibition against the use of household extension cords.  *See* Harbor Rules at ¶ 2.2(E)(2), Ex. 8 to Matison Decl. (C12-946, docket no. 160-7; C12-1829, docket no. 144-7); *see also* Loud Decl. (C12-946, docket no. 160-5; C12-1829, docket no. 144-5).  Because the Vessel Owners' motion for summary judgment can be decided without construing the Moorage Agreement, and because the parties have not discussed in their briefs the last antecedent rule or any other relevant canon of construction, the Court makes no ruling concerning whether the Port of Bellingham would be entitled to indemnification from the Vessel Owners if the origin of the fire was in the G East Boathouse, but not on any of the yachts belonging to the Vessel Owners.  The parties are DIRECTED to address this issue in their trial briefs.

(3)   The Clerk is DIRECTED to send a copy of this Minute Order to all counsel of record.

Dated this 15th day of June, 2015.

<u>William M. McCool</u>
Clerk

<u>s/Karen Dews</u>
Deputy Clerk

MINUTE ORDER - 6